UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Arthur William Macon, ) | | |
| Petitioner, ) | | C/A No. |
| ) | | |
| vs. ) | | |
| ) | | **Petition For Writ of Habeas Corpus by a** |
| ) | | **Person in State Custody (Verified)** |
| Bryan Stirling, Director, South Carolina ) | | |
| Department of Corrections, and William ) | | |
| Langdon III, Warden, Allendale Correctional ) | | |
| Institution, ) | | |
| Respondents. ) | | |
| ) | | |

Arthur William Macon, a person in state custody, petitions this Court to grant her relief from his convictions and sentences pursuant to 28 U.S.C. § 2254. Mr. Macon files this petition in a substantially similar format to the form petition for writ of habeas corpus by a person in state custody available from this Court. In support of her petition, Mr. Macon states:

1. (a) Mr. Macon was convicted and sentenced by the Court of General Sessions for the Fifth Judicial Circuit, Richland County, South Carolina.

    (b) The criminal docket case umber was ****

2. (a) Date of Conviction: October 3, 2014

    (b) Date of Sentence: October 3, 2023

3. Length of Sentence: 23 years

4. Mr. Macon was convicted of only one crime, armed robbery. He was acquitted of four counts of kidnapping.

5. Mr. Macon was convicted and sentenced for the crime of armed robbery.

6. Mr. Macon pled not guilty.

7. Mr. Macon did not testify during any pre-trial hearing, during his jury trail, or during any post-trial hearings in the Court of General Sessions. Mr. Macon testified during his post-conviction relief hearing.

8. Mr. Macon appealed.

9. Mr. Macon appealed his conviction and sentence to the Court of Appeals of South Carolina. *State v. Macon,* Appellate Case No. 2014-002126, Unpublished Opinion No. 2018-UP-031 (Filed January 17, 2018). Mr. Macon raised the following two issues on appeal:

   a. Did the trial court commit error when it allowed Ricky Woodberry to testify that Jason Colon was schizophrenic, had a lobotomy, was passive and had a mind of a thirteen (13) year old in order to bolster Colon's testimony against the Appellant?

   b. Did the trial court commit error when it allowed Ricky Woodberry to testify about Jason Colon's medical condition as the testimony was hearsay and Woodberry lacked the necessary special knowledge, skill, experience or training to testify on this issue?

On January 17, 2018, the Court of Appeals denied Mr. Macon's appeal in an unpublished opinion. On February 16, 2018, Mr. Macon petitioned for rehearing. On March 22, 2018, the Court of Appeals denied the petition for rehearing.

Mr. Macon appealed to the Supreme Court of South Carolina. *State v. Macon*, Appellate Case No. 2018-000737. Mr. Macon raised the following issues:

   1. Did the Court of Appeals err in holding that Woodberry's testimony was not improper character evidence and did not contribute to the verdict?

   2. Did the Court of Appeals err in holding that Woodberry's hearsay testimony was harmless and that the Petitioner was not harmed?

   3. Did the Court of Appeals err in holding that the argument that Woodberry's testimony was outside the scope of lay witness testimony was not preserved at trial?

On October 18, 2018, Supreme Court denied the petition for a writ of certiorari. The Remittitur issued on November 16, 2018.

Mr. Macon did not file a petition for writ of certiorari with the Supreme Court of the United States.

10. Mr. Macon filed an application for post-conviction relief.

11. Mr. Macon filed an application for post-conviction relief ("PCR") in the Court of Common Pleas for the Fifth Judicial Circuit, Richland County, South Carolina. *Macon v. State*, Case No. 2019-CP-40-05591. Mr. Macon mailed this PCR application on September 23, 2019, but the Clerk of Court did not file the application until October 4, 2019, when Mr. Macon filed a petition for a writ of mandamus seeking an order requiring the Clerk of Court to file the application. The PCR application raised the following grounds of relief:

a. Mr. Macon was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution, because trial counsel had a conflict of interest. *Strickland v. Washington,* 466 U.S. 668 (1984).

Appointed trial counsel, who is married to a Richland County Solicitor, had a conflict of interest, as a result of that relationship, that was not disclosed to Mr. Macon. *Lomax v. State*, 379 S.C. 93, 665 S.E.2d 164 (2008), *abrogated on other grounds by by Smalls v. State*, 422 S.C. 174, 810 S.E.2d 836 (2018); *and see Commonwealth v. Croken*, 432 Mass. 266, 273, 733 N.E.2d 1005, 1011 (2000) ("where a criminal defense lawyer represents a client and a close relative or an intimate companion is a colleague of the prosecutor who seeks to convict the client, the requirements of the [ethical] rule must be met") (citing Massachusetts Bar Association, Committee on Professional Ethics, Opinion No. 95–3 (relative of a district attorney could represent criminal defendants whom the district attorney's office prosecuted, provided [1] the relative not represent clients in cases in which the district attorney is involved; and [2] the conflict be fully disclosed in writing and consented to by the client)); *People v. Jackson*, 167 Cal. App. 3d 829, 213 Cal. Rptr. 521 (Ct. App. 1985) (failure of appointed trial counsel to inform defendant of counsel's ongoing "dating" relationship with prosecutor denied defendant his right to effective assistance of counsel under the California Constitution).

b. Mr. Macon was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution, during the pre-trial stage of his case. *Strickland.*

Trial counsel's performance was deficient and prejudicial during the pre-trial stages of Mr. Macon's case in one or more of the following ways:

(1) Failing to investigate, develop, and present evidence to establish that Mr. Macon in not guilty of the charge of armed robbery. *Ard v. Catoe*, 372 S.C. 318, 642 S.E.2d 590 (2007).

(2) Failing to object to an irregularity in the indictment when the body of the indictment states the grand jurors met on January 16, 2013 and the face of the indictment states the grand jurors returned a "true bill" on July 16, 2014.

c. Mr. Macon was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution, during the trial of his case. *Strickland*.

Trial counsel's performance was deficient and prejudicial during the trial of Mr. Macon's case in one or more of the following ways:

(1) Failing to object to the prosecutor's closing argument calling Mr. Macon "a liar." Tr. 368, line 9. *Major v. Alverson*, 183 S.C. 123, 190 S.E. 449, 450 (1937) ("referring to defendant as a 'bare faced liar'" during closing argument required new trial); *State v. Blurton*, 342 S.C. 500, 512, 537 S.E.2d 291, 297 (Ct. App. 2000) (cumulative error of

solicitor's improper argument calling defendant a liar and improperly excluded evidence warranted reversal), *reversed on other grounds by State v. Blurton,* 352 S.C. 203, 573 S.E.2d 802 (2002).

(2) Failing to object to the prosecution and prosecution witnesses improperly vouching for Jason Colon, who was the co-defendant and material witness for the state. *E.g. State v. Simmons*, 423 S.C. 552, 816 S.E.2d 566, (2018); *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013); *State v. Jennings*, 394 S.C. 473, 716 S.E.2d 91 (2011); *Gilchrist v. State*, 350 S.C. 221, 565 S.E.2d 281 (2002); *State v. Dawkins*, 297 S.C. 386, 377 S.E.2d 298 (1989); *State v. McKerley,* 397 S.C. 461, 725 S.E.2d 139 (Ct. App. 2012).

d. Mr. Macon was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution, while the jurors were deliberating about his guilt or innocence. *Strickland.*

Trial counsel's performance was deficient and prejudicial while the jurors were deliberating about Mr. Macon's guilt or innocence in one or more of the following ways:

(1)  When the jurors sent a note (Court's Exhibit 4) stating, "We are not unanimous on any of the charges yet, how do you want us to proceed?," and the Solicitor agreed, "They are deadlocked," trial counsel failed object to the trial judge instructing the jurors to continue deliberating when that instruction did not instruct the jurors that "the verdict of the jury should represent the opinion of each individual juror," not "a mere acquiescence in the conclusion of his fellow[]" jurors, and the jurors in the majority should listen to the minority juror and consider the "correctness of a judgment which was not concurred in by the majority." *Allen v. United States*, 164 U.S. 492, 501 (1896).

(2)  When the jurors sent a note (Court Exhibit 5) stating, "Still at a stalemate," trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

(3)  When the jurors sent a note (Court's Exhibit 8) stating, "We are 11-1. Same as yesterday at this same time and when we left. The one person is not in agreement with the majority and said will not change their minds [sic]," trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

(4)  When the jurors sent a note (Court's Exhibit 8) stating, "We are 11-1. Same as yesterday at this same time and when we left. The one person is not in agreement with the majority and said will not change their minds [sic]," trial counsel failed to object to the trial judge's *Allen* charge that singled out the sole juror that was holding out for acquittal. *Tucker v. Catoe*, 346 S.C. 483, 552 S.E.2d 712 (2001); *State v. Hughes*, 336 S.C. 585, 521 S.E.2d 500 (1999). *See also Lowenfield v.*

       *Phelps*, 484 U.S. 231 (1988); *Dawson v. State*, 352 S.C. 15, 20, 572 S.E.2d 445, 447 (2002).

  (5)    When the jurors sent a note (Court's Exhibit 12) stating, "We have deliberated for the past 8 hours and we are still in the same position. Fatigue has now set in and we need refreshing," and the foreman of the jury informed the trial judge the jurors were at an "impasse" and two or three jurors wanted to terminate deliberations, trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

e.    The cumulative effect of trial counsel's errors entitles Mr. Macon to a new trial. *Williams v. Taylor*, 529 U.S. 362 (2000); *Kyles v. Whitley*, 514 U.S. 419 (1995).

The cumulative effect of trial counsel's errors, as set forth in 11(a)-(d), entitles Mr. Macon to a new trial. *Williams; Kyles.*

On April 16, 2021, the Honorable Brooks P. Goldsmith convened an evidentiary hearing via WebEx. A. 687-850. By written order dated June 29, 2021, Judge Goldsmith dismissed Mr. Macon's PCR application. A. 875-907. On July 16, 2021, Mr. Macon served his Rule 59(e), SCRCP. A. 908-82. On July 26, 2021, 2021, the State responded to the motion. A. 982-1001. On August 5, 2021, Mr. Macon replied. A. 1002-06. On August 10, 2021, Judge Goldsmith denied the Rule 59(e) motion. A. 1007.

Mr. Macon appealed the Supreme Court of South Carolina. *Macon v. State*, Appellate Case No. 2021-000946. He raised the following questions on appeal:

a.    Did trial counsel render constitutionally deficient and prejudicial assistance of counsel—in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution—by failing to obtain a mistrial when the jurors were deadlocked for several days, fatigued, and forced to continue deliberations even though some of the jurors wanted to be released from jury service?

b.    Did trial counsel render constitutionally deficient and prejudicial assistance of counsel—in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution—when she had a conflict of interest because she was married to the Deputy Solicitor who had supervisory responsibility for the assistant solicitors prosecuting Arthur Macon?

c.    Did trial counsel render constitutionally deficient and prejudicial assistance of counsel—in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution—by failing to object to the prosecutor's improper closing argument calling Arthur Macon a liar?

d.    Did trial counsel render constitutionally deficient and prejudicial assistance of counsel—in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 3 and 14 of the South Carolina Constitution—by failing to object to

      improper vouching of a prosecution witness by another prosecution witness during the trial and the prosecutor during closing argument?

    e. Should this Court order a new trial based on the cumulative error doctrine?

    f. Should this Court require post-conviction relief judges to draft the final orders in PCR cases in order to ensure the findings of fact and conclusions of law, required by S.C. Code Ann. § 17-27-80, are those of the court, rather than an advocate, and to preserve the separation of powers between the judicial branch and executive branch as required by S.C. Const. Art. I, § 8?

On August 9, 2022, the Supreme Court transferred the appeal to the Court of Appeals of South Carolina. On September 12, 2023, the Court of Appeals denied the petition for a writ of certiorari. On September 28, 2023, the Remittitur issued. On October 2, 2023, the Clerk for Court for Richland County filed the Remittitur.

12. Grounds for Relief:

Mr. Macon was denied the right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, while the jurors were deliberating about his guilt or innocence. *Strickland.* Trial counsel's performance was deficient and prejudicial while the jurors were deliberating about Mr. Macon's guilt or innocence in one or more of the following ways:

    a. When the jurors sent a note (Court's Exhibit 4) stating, "We are not unanimous on any of the charges yet, how do you want us to proceed?," and the Solicitor agreed, "They are deadlocked," trial counsel failed object to the trial judge instructing the jurors to continue deliberating when that instruction did not instruct the jurors that "the verdict of the jury should represent the opinion of each individual juror," not "a mere acquiescence in the conclusion of his fellow[]" jurors, and the jurors in the majority should listen to the minority juror and consider the "correctness of a judgment which was not concurred in by the majority." *Allen v. United States*, 164 U.S. 492, 501 (1896).

    b. When the jurors sent a note (Court Exhibit 5) stating, "Still at a stalemate," trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

    c. When the jurors sent a note (Court's Exhibit 8) stating, "We are 11-1. Same as yesterday at this same time and when we left. The one person is not in agreement with the majority and said will not change their minds [sic]," trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

    d. When the jurors sent a note (Court's Exhibit 8) stating, "We are 11-1. Same as yesterday at this same time and when we left. The one person is not in agreement with the majority and said will not change their minds [sic]," trial counsel failed to object to the trial judge's *Allen* charge that singled out the sole juror that was holding out for

6

   acquittal. *Tucker v. Catoe*, 346 S.C. 483, 552 S.E.2d 712 (2001); *State v. Hughes*, 336 S.C. 585, 521 S.E.2d 500 (1999). *See also Lowenfield v. Phelps*, 484 U.S. 231 (1988); *Dawson v. State*, 352 S.C. 15, 20, 572 S.E.2d 445, 447 (2002).

 e. When the jurors sent a note (Court's Exhibit 12) stating, "We have deliberated for the past 8 hours and we are still in the same position. Fatigue has now set in and we need refreshing," and the foreman of the jury informed the trial judge the jurors were at an "impasse" and two or three jurors wanted to terminate deliberations, trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

A. Supporting Facts:

After instructing the jurors their verdict must be unanimous (A. 418), the trial judge submitted the case to the jurors at 10:51 a.m. on Wednesday, October 1, 2014 (A. 422). At 1:10 p.m., the jurors asked several questions including the "definition of reasonable doubt," which the trial court re-instructed. A. 423-26, 851. At 3:01 p.m., the jurors announced, "We are not unanimous on any of the charges yet." A. 428, 853. The jurors returned to the courtroom, and the trial court instructed, "You have to continue your deliberations. Okay? I'm going to send you all back in the jury room." A. 429. At 6:10 p.m., the jurors asked:

> Please give us a copy of "hand of one is hand of all" or re-explain it.
>
> Update. **Still at a stalemate**. Progress is really slow. Do we need to come back tomorrow? Suggestion. We feel if we sleep on it we might be clearer in the morning.

A. 430-31, 854 (emphasis added). At 6:21 p.m., the trial judge excused the jurors until 9:30 a.m. on Thursday, October 2, 2014. A. 436.

The Jurors resumed deliberations at 9:53 a.m. on October 2, 2014. A. 439. At 1:02 p.m., the jurors announced:

> Update. We are now at 11 to 1. Same as yesterday at this time. And when we left. The one person is not in agreement with the majority and said that they will not change their mind.

A. 442-43, 856. The trial judge gave an *Allen* charge that instructed the single juror not in agreement with the majority to "make every reasonable effort to reach a unanimous verdict,"

7

"consider the majorities position," and "re-evaluate your position for reasonableness, correctness, and impartiality." Finally, the trial judge instructed the jurors "to return to your deliberations *with the hope you can arrive at a verdict* within a reasonable time." A. 444-46 (emphasis added). After the jurors left the courtroom, the trial judge stated, "If they come back again and say they are deadlocked, I will declare a mistrial." Both the Solicitor and trial counsel agreed a mistrial would be required under those circumstances. A. 446. The jurors resumed deliberations at 1:24 p.m. *Id.*

At 6:21 p.m., the jurors announced, "Your Honor, we have deliberated for the past eight hours and we are still in the same position. Fatigue has now set in and we need freshness." A. 448, 859. The foreman returned to the courtroom without the rest of the jurors, and the following exchange occurred:

> THE COURT: I received your note, which we have marked as Court's Exhibit Number 12. And it reads: Your Honor, we have deliberated for the past eight hours and are still in the same position. [Fatigue has now set] in and we need freshness. I am not sure quite what you are asking for.
>
> MR. FOREMAN: Well, *many of them are feeling like we are at an impasse.* We don't know how much longer we can deliberate and still be soundly doing what we need to do. *But we're at your mercy.*
>
> MR. CATHCART: Your Honor, I would just ask if it means come back tomorrow or take a break or dinner or –
>
> THE COURT: I mean, do you all need to go outside or are you asking to come back tomorrow or are you asking for food or are you asking – do you want to go back and just –
>
> MR. FOREMAN: Some of them – well, *a good bit of them just want to get out of that room.* That is the biggest thing.
>
> THE COURT: *Now or forever?*
>
> MR. FOREMAN: *Two or three want to be forever.* But, you know, we are willing to do what we need to do, but just don't want to be in that room right now. You know, some people are having claustrophobia problems. But somebody even mentioned, If I can just get fresh air for an hour.

8

THE COURT: Why don't you go try to see what it is that they need.

MR. CATHCART: Your Honor, I would point out it is 6:30 almost, so come back tomorrow.

THE COURT: Well, they have not asked me for that.

MR. CATHCART: I understand that.

THE COURT: They have not asked me to come back tomorrow. So I can send you back in and try to find out what it is they are looking for.

MR. FOREMAN: Okay.

THE COURT: What it is that y'all want.

MR. FOREMAN: Okay.

THE COURT: And then

MR. FOREMAN: In a note?

THE COURT: You can send a note or come back in, either way.

MR. FOREMAN: I'll come back in. Thank you, Your Honor.

(Foreman exits courtroom.)

(Pause.)

(Foreman returns to courtroom at 6:40 p.m.)

MR. FOREMAN: All right. *The majority stated that they wouldn't mind coming back tomorrow. However, the question is, what is the reasonable amount of deliberation time that you mentioned earlier before you declare* –

THE COURT: Oh, in the charge when I said reasonable?

MR. FOREMAN: Yes, amount of time.

THE COURT: I can't give you an amount. It is up to y'all.

MR. FOREMAN: So after we feel that a certain amount of time, it is up to us?

THE COURT: Reasonable for you all. I can't give you a time.

9

> MR. FOREMAN: Well, we'll come back tomorrow at whatever time you give me.
>
> THE COURT: We'll start back at 10:00 in the morning. Once they get here they can begin their deliberations. I mean, we don't have anything to do. You can just start deliberations. Since it is almost 7:00 now, we will let y'all get home and we'll start back at 10:00. I have got to bring them all in.

A. 449-52 (emphasis added).

At 6:42 p.m., all of the jurors returned to the courtroom. The trial judge excused the juror until 10:00 on Friday, October, 3, 2014 with instructions to resume deliberations once all the jurors were present. A. 452-53.

According to the trial transcript, deliberations resumed at 10:00 a.m. on October 3, 2014. A. 454. At 12:18 p.m., the Clerk of Court inquired whether it would be necessary to order lunch. The foreman returned to the courtroom without the rest of the jurors. Initially, the foreman informed the trial judge that "lunch may help," but the matter was left unresolved after the trial judge stated, "[I]t takes maybe an hour or two to get the food here." A. 454-55. At 12:47 p.m., the jurors returned a guilty verdict on the armed robbery charge. A. 456.

- B. Mr. Macon exhausted his remedies.
- C. Mr. Macon did not raise this ground in his direct appeal because trial counsel did not preserve this ground for appellate review.
- D. Mr. Macon raised this ground in his application for post-conviction relief and appealed this ground to the state's highest court.
- E. Mr. Macon has not sought any other remedy for this ground.

13. Mr. Macon presented this ground to the state's highest court. This petition does not contain any ground that has not been presented to a state or federal court.

14. Mr. Macon has not previously filed a petition for writ of habeas corpus in any federal court.

15. Mr. Macon does not have any petition or appeal, not yet decided, in any state or federal court.

16. Prior Counsel:

    a. Kristy G. Goldberg represented Mr. Macon at his jury trial.

    b. R. Bentz Kirby, Glenn Walters & Associates, PA, 3912 Montgomery Ave, Columbia, SC 29205, and Glenn Walters, Glenn Walters & Associates, PA, PO Box 1346, Orangeburg, SC 29116-1346, represented Mr. Macon on his direct appeal to the Court of Appeals and subsequent petition for a writ of certiorari to the Supreme Court of South Carolina.

    c. Undersigned counsel represented Mr. Macon on his application for post-conviction relief and subsequent petition to the Supreme Court of South Carolina.

17. Mr. Macon does not have any future sentence to serve.

18. Timeliness of Petition: The Supreme Court of South Carolina denied Mr. Macon's direct appeal petition for a writ of certiorari on October 18, 2018. The period of time to appeal to the United States Supreme Court expired on January 16, 2019. When the Clerk of Court for Richland County belatedly filed Mr. Macon's PCR application on October 4, 2019, 261 days had expired on the statute of limitations, leaving 104 days on the statue of limitations. Following the denial Mr. Macon's petition for writ of certiorari following the direct appeal, the he Clerk of Court filed the Remittitur on October 2, 2023, making the statue of limitations January 14, 2024. This petition is timely.

    WHEREFORE, Arthur Macon asks that the Court issue an order to have him brought before it, to the end that he may be discharged from the unconstitutional confinement and restraint and grant such other relief as may be necessary and appropriate.

    Respectfully submitted,

    By s/ *E. Charles Grose, Jr.*
    E. Charles Grose, Jr.
    Federal Court ID: 6072
    The Grose Law Firm, LLC
    305 Main Street
    Greenwood, SC 29646
    charles@groselawfirm.com
    (864) 538-4466

    ***Attorney for Arthur Macon***

January 11, 2024
Greenwood, South Carolina

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct. Executed by counsel for Petitioner on January 11, 2024.

By: s/*E. Charles Grose, Jr.*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of this Petition For Writ of Habeas Corpus by a Person in State Custody (Verified) on the State of South Carolina by emailing a copy, along with attachments, to Melody J. Brown, Senior Assistant Deputy Attorney General, Capital and Collateral Litigation Section, Office of the Attorney General, State of South Carolina, mbrown@scag.gov, on January 11, 2024.

By: s/*E. Charles Grose, Jr.*