IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Arthur William Macon, | ) | |
| | ) | C.A. No. 0:24-0185-HMH-PJG |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Bryan Stirling, *Director*; South Carolina | ) | |
| Department of Corrections; William | ) | |
| Langdon, III, *Warden, Allendale Correctional* | ) | |
| *Institution*; | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Arthur William Macon ("Macon"), a state prisoner, seeks a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his trial counsel rendered constitutionally ineffective assistance during jury deliberations. This matter is now before the court on Respondents' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the court grants Respondents' motion and denies Macon's petition.

## I. BACKGROUND

### A. Factual Background

In 2013, Macon was indicted on one count of armed robbery and four counts of kidnapping for his participation in the robbery of a TD Bank in Columbia, South Carolina. Prosecutors alleged that Macon planned the crime and enlisted his "easily manipulated" sixteen-year-old cousin to carry it out. (Return Attach. 1 (App'x Vol. 1 at 136-41), ECF No. 21-1.)

Macon's trial began on September 29, 2014. Two days later, on the morning of October 1, 2014, the trial court submitted the case to the jury. (Id. Attach. 1 (App'x Vol. 1 at 420), ECF

No. 21-3.)  At 3:01 p.m., the jury sent a note to the court stating, "We are not unanimous on any of the charges yet.  How do you want us to proceed?"  (Id. Attach. 1 (App'x Vol. 2 at 853), ECF No. 21-5.)  The court summoned the jury and responded: "You have to continue your deliberations.  Okay?  I'm going to send you all back in the jury room.  If there is any testimony that you would like heard or to hear again, we'll pull it up so you can hear it again . . . ."  (Id. Attach. 1 (App'x Vol. 1 at 429), ECF No. 21-3.)   The jury reheard the testimony of one witness before returning to the jury room at 3:35 p.m.  (Id. Attach. 1 (App'x Vol. 1 at 430), ECF No. 21-3.)

At 6:10 p.m., the court received another note from the jury, which read:

> Please give use a copy of the hand of one is the hand of all [charge] or reexplain it.
>
> Update: Still at a stalemate.  Progress is really slow.  Do we need to come back tomorrow?  Suggestion: we feel if we sleep on it, we might be clearer in the morning.

(Return Attach. 1 (App'x Vol. 2 at 854), ECF No. 21-5.)  After recalling the jurors, the court reinstructed them on the "hand of one, hand of all" doctrine and dismissed them for the day.  (Id. Attach. 1 (App'x Vol. 1 at 432-35), ECF No. 21-3.)

The jury resumed deliberations at 9:53 a.m. the next morning.  (Id. Attach. 1 (App'x Vol. 1 at 439), ECF No. 21-3.)  At 1:02 p.m., the jury submitted the following note to the court: "Update: We are now at 11–1.  Same as yesterday at this same time and when we left.  The 1 person is not in agreement with the majority and said they will not change their mind[]."  (Id. Attach. 1 (App'x Vol. 2 at 856), ECF No. 21-5.)  In response, the court issued an Allen charge, instructing the jury as follows:

> Ladies and gentlemen, you have stated that you have been unable to agree on a verdict in this case.  As I instructed you earlier, the verdict of the jury must be unanimous.  When a matter is in dispute it isn't always easy for even two people to agree, so when 12 people must agree it becomes even more difficult.

2

In most cases, absolute certainty cannot be reached or expected. However, you have a duty to make every reasonable effort to reach a unanimous verdict.

In doing this, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Tell each other how you feel and why you feel that way. Discuss your differences with open mind.

Although the verdict of the jury must be unanimous, every one of you has the right to your own opinion. The verdict you agree to must be your own verdict, the result of your own conviction, and you should not give up your firmly held belief merely to be in agreement with your fellow jurors.

The majority should consider the minority's position and the minority should consider the majority's position.

You should carefully consider and respect the opinions of each other and re-evaluate your position for reasonableness, correctness, and impartiality. You must lay aside all outside matters and re-examine the question before you based on the law and evidence in this case.

If you do not agree on a verdict in this case, I must declare a mistrial. In that case it does not mean that anybody wins or loses, it just means that at sometime in the future I will try this case with some other jury sitting where you are sitting now. The same participants will come in and the same lawyers will ask basically the same questions and get basically the same answers. And we will go through the whole process again.

You were selected in the same manner and from the same source as any future jury will be, and there is no reason for me to suppose that the case will ever be submitted to 12 more intelligent, impartial, conscientious, and competent jurors than you, or that more or clearer evidence will be produced on one side or the other.

I therefore ask you to return to your deliberations with the hope you can arrive at a verdict within a reasonable time.

(Id. Attach. 1 (App'x Vol. 1 at 444-46), ECF No. 21-3.) Outside the jury's presence, the court announced that it would "declare a mistrial" if the jury "c[a]me back again and [said] that they [were] deadlocked." (Return Attach. 1 (App'x Vol. 1 at 446), ECF No. 21-3.)

About five hours later, at 6:21 p.m., the court received a note from the jury stating that it was "still in the same position" and "need[ed] freshness" because "fatigue" had set in. (Id. Attach. 1 (App'x Vol. 2 at 859), ECF No. 21-5.) The court was unsure of what, exactly, the jury

3

was requesting, so it summoned the foreperson for clarification. (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 448-49), ECF No. 21-3.) The foreperson explained that "many of [the jurors] are feeling like we are at an impasse. We don't know how much longer we can deliberate and still be soundly doing what we need to do. But we're at your mercy." (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 450), ECF No. 21-3.) The "biggest thing," he continued, was that "a good bit" of the jurors "just want to get out of that room." (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 450), ECF No. 21-3.) The court asked, "Now or forever?" and the foreperson replied, "Two or three want to be forever. But, you know, we are willing to do what we need to do, but just don't want to be in that room right now." (Return Attach. 1 (App'x Vol. 1 at 450), ECF No. 21-3.) At this point, the court instructed the foreperson to go back to the jury room and "find out what it is they are looking for." (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 451), ECF No. 21-3.) The foreperson returned a few minutes later and relayed to the court that the "majority" of the jurors "wouldn't mind coming back tomorrow." (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 451-52), ECF No. 21-3.) With this information, the court excused the jurors for the evening. (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 453), ECF No. 21-3.

The jury reconvened at 10:00 a.m. the following morning, October 3, 2014. (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 454), ECF No. 21-3.) Shortly before 1:00 p.m., the jury returned a guilty verdict on the armed robbery count but acquitted Macon of the kidnapping counts. (Return Attach. 1 (App'x Vol. 1 at 456-58), ECF No. 21-3.) The trial court then sentenced Macon to twenty-three years' imprisonment. (<u>Id.</u> Attach. 1 (App'x Vol. 1 at 474), ECF No. 21-3.)

### B. Procedural Background

Following his conviction, Macon appealed to the South Carolina Court of Appeals, arguing that the trial court erred in admitting certain testimony about his cousin's mental capacity. (<u>Id.</u> Attach. 1 (App'x Vol. 2 at 513-32), ECF No. 21-4.) The Court of Appeals

4

affirmed Macon's conviction and sentence in an unpublished opinion, and the South Carolina

Supreme Court denied certiorari.  (Id. Attach. 1 (App'x Vol. 2 at 557-59, 610), ECF No. 21-4.)

     In 2019, Macon applied for post-conviction relief ("PCR"), claiming, among other things,

that he "was denied the right to effective assistance of counsel . . . while the jurors were

deliberating about his guilt or innocence."  (Id. Attach. 1 (App'x Vol. 2 at 614-20), ECF No. 21-

4.)  The PCR court held an evidentiary hearing and denied Macon's application in July 2021.

(Return Attach. 1 (App'x Vol. 2 at 875-907), ECF No. 21-5.)  Macon's subsequent motion for

reconsideration was also denied.  (Id. Attach. 1 (App'x Vol. 3 at 1007), ECF No. 21-7.)

     Afterward, Macon petitioned for a writ of certiorari from the South Carolina Supreme

Court, which transferred his PCR appeal to the Court of Appeals.  (Id. Attach. 5 (Transfer

Order), ECF No. 21-11.)  The Court of Appeals denied certiorari in September 2023.  (Id.

Attach. 6 (Order Denying Cert.), ECF No. 21-12.)

     In January 2024, Macon filed the instant § 2254 petition, arguing that his "counsel's

performance was deficient and prejudicial" in five ways:

[1.]    When the jurors sent a note . . . stating, "We are not unanimous on any of
the charges yet, how do you want us to proceed?[]" and the Solicitor agreed,
"They are deadlocked," trial counsel failed [to] object to the trial judge
instructing the jurors to continue deliberating when that instruction did not
instruct the jurors that "the verdict of the jury should represent the opinion
of each individual juror," not "a mere acquiescence in the conclusion of his
fellow[]" jurors, and the jurors in the majority should listen to the minority
juror and consider the "correctness of a judgment which was not concurred
in by the majority."  Allen v. United States, 164 U.S. 492, 501 (1896).

[2.]    When the jurors sent a note . . . stating, "Still at a stalemate," trial counsel
failed to move for the trial judge to declare a mistrial as mandated by S.C.
Code. Ann. § 14-7-1330.

[3.]    When the jurors sent a note . . . stating, "We are 11-1.  Same as yesterday
at this same time and when we left.  The [1] person is not in agreement with
the majority and said [they] will not change their minds [sic]," trial counsel

failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

[4.]    When the jurors sent a note . . . stating, "We are 11-1. Same as yesterday at this same time and when we left. The [1] person is not in agreement with the majority and said [they] will not change their minds [sic]," trial counsel failed to object to the trial judge's <u>Allen</u> charge that singled out the sole juror that was holding out for acquittal. <u>Tucker v. Catoe</u>, 346 S.C. 483, 552 S.E.2d 712 (2001); <u>State v. Hughes</u>, 336 S.C. 585, 521 S.E.2d 500 (1999). <u>See also</u> <u>Lowenfield v. Phelps</u>, 484 U.S. 231 (1988); <u>Dawson v. State</u>, 352 S.C. 15, 20, 572 S.E.2d 445, 447 (2002).

[5.]    When the jurors sent a note . . . stating, "We have deliberated for the past 8 hours and we are still in the same position. Fatigue has now set in and we need refreshing," and the foreman of the jury informed the trial judge the jurors were at an "impasse" and two or three jurors wanted to terminate deliberations, trial counsel failed to move for the trial judge to declare a mistrial as mandated by S.C. Code. Ann. § 14-7-1330.

(§ 2254 Petition 6-7, ECF No. 1.)

On June 12, 2024, Respondents moved for summary judgment. (Mot. Summ. J., ECF No. 22.) Macon responded in opposition on July 10, 2024, (Resp. Opp'n, ECF No. 29), and on July 29, 2024, Respondents filed their reply, (Reply, ECF No. 35.) This matter is now ripe for review.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." <u>Ballengee v. CBS Broad., Inc.</u>, 968 F.3d 344, 349 (4th Cir. 2020). To withstand summary judgment, however, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of

6

evidence." <u>Dash v. Mayweather</u>, 731 F.3d 303, 311 (4th Cir. 2013).  Rather, the nonmoving

party must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or

"show[] that the materials cited [by the moving party] do not establish the absence . . . of a

genuine dispute."  Fed. R. Civ. P. 56(c)(1).

### B. Habeas Relief Under 28 U.S.C. § 2254

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court

may consider a state prisoner's habeas petition "only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To

obtain habeas relief under AEDPA, a petitioner must show that the PCR court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law "if the state court

applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it

decides a case differently than [the Supreme Court has] done on a set of materially

indistinguishable facts."  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  Stated another way, the

petitioner must show that the decision was "diametrically different" from, "opposite in character

or nature" to, or "mutually opposed" to a prior Supreme Court decision.  <u>Williams v. Taylor</u>, 529

U.S. 362, 405 (2000) (internal quotation marks omitted).

A state-court decision involves an "unreasonable application" of clearly established

federal law when "the state court correctly identifies the governing legal principle . . . but

unreasonably applies it to the facts of the [petitioner's] case."  <u>Bell</u>, 535 U.S. at 694.  A

7

reviewing federal court cannot grant habeas relief simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411. Thus, if "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA. <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).

Finally, for a state court's factual determination to be unreasonable, "it must be more than merely incorrect or erroneous" — it must be "sufficiently against the weight of the evidence that it is objectively unreasonable." <u>Williams v. Stirling</u>, 914 F.3d 302, 312 (4th Cir. 2019) (internal quotation marks omitted). AEDPA instructs that a state court's factual determinations are "presumed to be correct" and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## C. Ineffective Assistance of Counsel

The standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), provides the "clearly established Federal law" governing ineffective-assistance-of-counsel claims. To prevail under <u>Strickland</u>, a petitioner "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." <u>Id.</u> at 687. Deficient performance means that "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." <u>Id.</u> at 688. In evaluating the performance prong, the court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." <u>Id.</u> at 689. To establish prejudice under the second prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Id. at 694. The court may address either Strickland prong first and need not address both if one is dispositive. Id. at 697.

When a § 2254 petition raises ineffective assistance of counsel as a ground for relief, review is "doubly" deferential: "[T]he question is not whether counsel's actions were reasonable," but "whether there is *any* reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105 (emphasis added). This standard requires that the court give "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013). Practically speaking, "a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." Dunn v. Reeves, 594 U.S. 731, 739-40 (2021) (emphasis in original) (quoting Harrington, 562 U.S. at 101).

### III. DISCUSSION

### A. Ground One

Macon first argues that trial counsel was constitutionally ineffective for not "request[ing] a proper Allen charge" when the jury reported at 3:01 p.m. on the first day of deliberations that it was "not unanimous on any of the charges yet." (Resp. Opp'n 1, 12-13, ECF No. 29.) The PCR court rejected this claim, reasoning that an Allen charge would have been premature at this point:

> As the jury's note specifically stated, they were informing the court they had not reached a unanimous verdict *yet*, and simultaneously request[ing] to rehear testimony of one of the State's main witnesses, . . . both of which indicate a continued willingness to deliberate. Accordingly, this Court finds the instruction given by the trial court to be appropriate and, as it was not an Allen charge, Counsel had no basis to object on the ground that the instruction did not comport with Allen's requirements.

(Return Attach. 1 (App'x Vol. 2 at 900), ECF No. 21-5) (emphasis in original).

9

Fairminded jurists could agree with this assessment. The jury had been deliberating for just over four hours when it sent the 3:01 p.m. note, and nothing in the note suggests that the jury was "hopelessly deadlocked" or unable to reach a verdict. See State v. Cottrell, 809 S.E.2d 423, 429, 436 (S.C. 2017) (observing that the trial judge "acted within his discretion and determined that the jury had not yet reached a deadlock" where the jury deliberated for two hours and then sent a note simply disclosing its vote tally and asking, "What is the next step?"). On the contrary, the foreperson's statement to the court, combined with the note's use of the word "yet," demonstrates that the jury wished to continue its deliberations after rehearing the requested testimony. Thus, the PCR court reasonably concluded that an Allen-type charge was unnecessary and that counsel was not ineffective for failing to request one.

### B. Ground Two

In his second ground for relief, Macon complains his counsel was ineffective for not moving for a mistrial under S.C. Code Ann. § 14-7-1330 when the jury declared at 6:10 p.m. on the first day of deliberations that it was "still at a stalemate." Under § 14-7-1330, a jury that "returns a second time without having agreed upon a verdict" after "due and thorough deliberation" may not "be sent out again without its own consent unless it shall ask from the court some further explanation of the law." S.C. Code Ann. § 14-7-1330. In other words, if a jury "returns deadlocked a second time and does not ask for [an] 'explanation of law,'" it "may not be required to continue to deliberate unless [it] consents." State v. Barnes, 739 S.E.2d 629, 630 n.4 (S.C. 2013).

The PCR court denied Macon's second claim because, in its view, the jury's return at 6:10 p.m. did not trigger the requirements of the statute:

> As discussed above, this Court finds the jury's first note, stating it was not unanimous yet and requesting to rehear testimony, was not an indication of

10

deadlock.  Similarly, this Court finds the second note, informing the court the jury was "still at a stalemate," again does not indicate deadlock.  The note goes on to request to be recharged on the hand of one, hand of all principle and states that the majority of the jurors feel progress could be made if they came back the next morning. . . .  Accordingly, because the requirements of section 14-7-1330 had not been met, Counsel cannot have been deficient for failing to move for a mistrial on that basis[.]

(Return Attach. 1 (App'x Vol. 2 at 901-02), ECF No. 21-5.)

The PCR court did not unreasonably apply Strickland or rely on unreasonable factual determinations in denying this claim.  Neither of the jury's returns to the courtroom on the first day of deliberations counted toward triggering § 14-7-1330 — the jury's 3:01 p.m. note asked to rehear testimony, and its 6:10 p.m. note sought further instruction on the law.  See Tucker v. Catoe (Tucker I), 221 F.3d 600, 608-09 (4th Cir. 2000) (holding that the jury's return to the courtroom following a request to rehear testimony did not count as a "return" under the statute because it "was at their own insistence and was not necessarily motivated by their inability to agree"); State v. Drakeford, 113 S.E. 307, 309 (S.C. 1922) (stating that the jury's return to the courtroom for "the purpose of . . . ask[ing] for instructions . . . clearly indicat[ed] the jury's own opinion that there had not at that time been 'due and thorough deliberation'").  Thus, because the jury had not yet returned deadlocked after engaging in "due and thorough deliberation," counsel was not deficient for failing to move for a mistrial when the jury sent the second note at 6:10 p.m.

### C. Ground Three

Macon's third ground for relief asserts that counsel should have moved for a mistrial under § 14-7-1330 after the jury announced, at 1:02 p.m. on the second day of deliberations, that it was divided 11–1.  The PCR court denied this claim, concluding that "[c]ounsel was not deficient for failing to move for a mistrial . . . at this point" because the jury's 1:02 p.m. note was

only the "first indication of deadlock." (Return Attach. 1 (App'x Vol. 2 at 902), ECF No. 21-5.) Here, again, Macon cannot show that the PCR court's conclusion was objectively unreasonable. For purposes of § 14-7-1330, the jury's first "return" occurred when it reported being deadlocked 11–1. See Tucker I, 221 F.3d at 609. Since a motion for a mistrial at this point would not have succeeded, counsel's performance did not fall below an "objective standard of reasonableness." Strickland, 466 U.S. at 688.

### D. Ground Four

Next, Macon contends that counsel provided ineffective assistance by failing to object to the trial court's Allen charge, which he claims coerced the jury into reaching a guilty verdict.

"Derived from Allen v. United States, 164 U.S. 492 (1896), the commonly termed Allen charge is a supplemental instruction given by a trial court when the jury has reached an impasse in its deliberations and is unable to reach a consensus." United States v. Cornell, 780 F.3d 616, 625 (4th Cir. 2015). It generally advises "deadlocked jurors to have deference to each other's views" and to listen to one another "with a disposition to be convinced." United States v. Burgos, 55 F.3d 933, 935-36 (4th Cir. 1995) (internal quotation marks omitted). An Allen charge must be "fair, neutral[,] and balanced," United States v. Cropp, 127 F.3d 354, 360 (4th Cir. 1997), and must not "coerce one side or the other" of a divided jury "into changing its position for the sake of unanimity," Burgos, 55 F.3d at 941; State v. Taylor, 829 S.E.2d 723, 727 (S.C. Ct. App. 2019) ("South Carolina approves the use of a modified Allen charge, which must be neutral and even-handed, instruct both the majority and minority to reconsider their views, and cannot be directed at the jurors in the minority.")

"Whether an Allen charge is unconstitutionally coercive must be judged 'in its context and under all the circumstances.'" Tucker v. Catoe (Tucker II), 552 S.E.2d 712, 716 (S.C. 2001)

12

(quoting Lowenfield v. Phelps, 484 U.S. 231, 237 (1988)).  Relevant factors include: (1) whether the charge speaks "specifically to minority jurors"; (2) whether the charge includes language such as "you must return a verdict"; (3) whether there was an "inquiry into the jury's numerical division"; and (4) the length of deliberations following the charge.  Id. at 716-18; accord Tucker I, 221 F.3d at 611.

The PCR court held that "the trial judge's Allen charge was a correct statement of the law and was not coercive" and that, as a result, counsel was not deficient, as she "had no meritorious basis to object."  (Return Attach. 1 (App'x Vol. 2 at 902-04), ECF No. 21-5.)  In reaching its decision, the PCR court noted that the language of the trial court's Allen charge was "nearly identical" to that of the one "approved" by the South Carolina Supreme Court in State v. Williams, 690 S.E.2d 62 (S.C. 2010).  (Id. Attach. 1 (App'x Vol. 2 at 902-03), ECF No. 21-5.)  Both charges, the PCR court observed, instructed that jurors should "consult with one another," "express [their] own views," "listen to the opinions of [their] fellow jurors" and "[d]iscuss [their] differences with open minds."  Williams, 690 S.E.2d at 67; (Return Attach. 1 (App'x Vol. 2 at 903), ECF No. 21-3.)  Each charge also urged both the majority and the minority to consider the other side's view and cautioned jurors not to give up their "firmly held beliefs" for the sake of reaching a verdict.  Williams, 690 S.E.2d at 68; (Return Attach. 1 (App'x Vol. 2 at 903), ECF No. 21-5.)  A side-by-side comparison of the charges appears below, with substantive differences in italics:

| | |
|---|---|
| Mr. Foreman, Ladies and Gentlemen of the jury, you've stated you've been unable to reach a verdict in this case.  When a matter is in dispute, it isn't always easy for even two people to agree.  So, when 12 people must agree, it becomes even more difficult.  In most cases absolute certainty cannot be reached or expected. | Ladies and gentlemen, you have stated that you have been unable to agree on a verdict in this case.  *As I instructed you earlier, the verdict of the jury must be unanimous.*  When a matter is in dispute it isn't always easy for even two people to agree, so when 12 people must agree it becomes even more difficult.  In most |

13

You should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Tell each other how you feel and why you feel that way. Discuss your differences with open minds. Therefore, to some degree it can be said jury service is a matter of give and take.

Every one of you has the right to your own opinion, the verdict you agree to must be your own verdict, a result of your own convictions. You should not give up your firmly held beliefs merely to be in agreement with your fellow jurors. The minority should consider the majority's opinion and the majority should consider the minority's opinion. You should carefully consider and respect the opinions of each other and evaluate your position for reasonableness, correctness, and partiality. You must lay aside all outside matters and reexamine the question before you base[d][on] the law and the evidence in this case.

I, therefore, ask you to return to your deliberations with the hope that you can arrive at a verdict.

Williams, 690 S.E.2d at 67-68.

cases, absolute certainty cannot be reached or expected. *However, you have a duty to make every reasonable effort to reach a unanimous verdict.* In doing this, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Tell each other how you feel and why you feel that way. Discuss your differences with open mind.

*Although the verdict of the jury must be unanimous*, every one of you has the right to your own opinion. The verdict you agree to must be your own verdict, the result of your own conviction, and you should not give up your firmly held belief merely to be in agreement with your fellow jurors. The majority should consider the minority's position and the minority should consider the majority's position. You should carefully consider and respect the opinions of each other and re-evaluate your position for reasonableness, correctness, and impartiality. You must lay aside all outside matters and re-examine the question before you based on the law and evidence in this case.

*If you do not agree on a verdict in this case, I must declare a mistrial. In that case it does not mean that anybody wins or loses, it just means that at sometime in the future I will try this case with some other jury sitting where you are sitting now. The same participants will come in and the same lawyers will ask basically the same questions and get basically the same answers. And we will go through the whole process again.*

*You were selected in the same manner and from the same source as any future jury will be, and there is no reason for me to suppose that the case will ever be*

14

> *submitted to 12 more intelligent,*
> *impartial, conscientious, and competent*
> *jurors than you, or that more or clearer*
> *evidence will be produced on one side or*
> *the other.*
>
> I therefore ask you to return to your
> deliberations with the hope you can arrive
> at a verdict *within a reasonable time.*
>
> (Return Attach. 1 (App'x Vol. 1 at 444-
> 46), ECF No. 21-5.)

Macon does not address the similarities between the two charges. He instead argues that the trial court's charge unduly coerced the jury because (1) the court knew of the jury's 11–1 split when it issued the charge, and (2) the jury was advised to continue deliberating "with the hope you can arrive at a verdict." (Resp. Opp'n 18-20, ECF No. 29.)

To be sure, these considerations weigh in Macon's favor to some degree. Courts have recognized that the risk of coercion is heightened when the judge knows the jury's numerical division — even if the jury has volunteered this information. See Tucker II, 552 S.E.2d at 717-18 (finding coercion where, among other things, the judge "did not act to prevent the jury's self-reporting" and stating that "knowledge of the jury's numerical division combined with knowledge of its decisional disagreement, followed by an Allen charge directed, at least in part, to minority jurors, is impermissibly coercive"); Brewster v. Hetzel, 913 F.3d 1042, 1055 (11th Cir. 2019) ("The problem exists whether the judge asked for the information or the jury disclosed it without any prompting. If the jury is aware that the court knows it is divided in favor of convicting the defendant, and the court repeatedly instructs the jury to continue deliberating, the jurors in the minority may feel pressured to join the majority in order to placate the judge."); see also Williams, 690 S.E.2d at 68 n.7 ("[T]o alleviate problems in future cases where the jury is deadlocked, we would advise trial judges to instruct the jurors not to disclose their numerical

15

division.").  In addition, the <u>Williams</u> court, despite upholding a charge employing the same language, cautioned judges against using the language "with the hope you can arrive at a verdict" in future charges.  "Because jurors are not required to reach a verdict after expressing that they are deadlocked," the court wrote, "we believe this language could potentially be construed as being coercive."  <u>Williams</u>, 690 S.E.2d at 68 n.7; <u>State v. Rampey</u>, 885 S.E.2d 366, 369 (S.C. 2022) (labeling this language "problematic"); <u>Workman v. State</u>, 771 S.E.2d 636, 639 (S.C. 2015) (granting PCR where trial counsel failed to object to an <u>Allen</u> charge containing this language).

At the same time, however, several other factors weigh strongly against a finding of coercion.  First, the trial court instructed that no juror should surrender his or her "firmly held beliefs" simply to reach a verdict.  "This language is one of the hallmarks of a typical <u>Allen</u> charge," <u>Rampey</u>, 885 S.E.2d at 371, and can "save[] borderline charges from crossing the line into coercion," <u>Taylor</u>, 829 S.E.2d at 729; <u>see</u> <u>Burgos</u>, 55 F.3d at 939 ("The most egregious mistake that can be made in the context of an <u>Allen</u> charge is for a district court to suggest, in any way, that jurors surrender their conscientious convictions."); <u>Smalls v. Batista</u>, 191 F.3d 272, 279 (2d Cir. 1999) ("[A] necessary component of any <u>Allen</u>-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs.").  Second, that the jury deliberated for roughly eight hours after receiving the instruction is compelling evidence that jurors were not coerced into abandoning their views.  <u>See</u> <u>United States v. Russell</u>, 971 F.2d 1098, 1108 (4th Cir. 1992) ("[T]he fact that the jury deliberated for approximately three hours after hearing the charge provides adequate assurance that the jury was not improperly coerced by the district court's instruction."); <u>Cropp</u>, 127 F.3d at 360 (no coercion where "the jury deliberated for an additional seven hours before reaching verdicts").  Finally, although the court mentioned

16

the consequences of a hung jury, it did not unduly emphasize the cost and expense of a possible retrial.  See United States v. Hylton, 349 F.3d 781, 788 (4th Cir. 2003) ("[W]e have indicated disfavor when a court giving an Allen charge focuses on the costs of a retrial . . . ."); Rampey, 885 S.E.2d at 370 (finding coercion where "the trial court reminded the jury of the substantial resources spent in bringing the case to trial" "[o]n no less than three separate occasions during [its] brief Allen charge"); Taylor, 829 S.E.2d at 729 (finding coercion where the Allen charge "overemphasized the cost and expense of a retrial").

At bottom, considering the trial court's Allen charge "in its context and under all the circumstances," Tucker II, 552 S.E.2d at 716 (quoting Lowenfield, 484 U.S. at 237)), a fairminded jurist could readily conclude that the instruction was not unconstitutionally coercive and that counsel was not ineffective in failing to object to it.  For this reason, Macon is not entitled to habeas relief on his fourth claim.  See Cox v. Weber, 102 F.4th 663, 672 (4th Cir. 2024) (explaining that "a petitioner must demonstrate that the state PCR court's ruling on his ineffective assistance claim 'was so lacking in justification' that no 'fairminded jurist[]' could agree with it" (quoting Harrington, 562 U.S. at 101, 103)).

### E. Ground Five

Finally, Macon argues that counsel rendered ineffective assistance by failing to move for a mistrial under § 14-7-1330 after the jury stated at 6:21 p.m. on the second day of deliberations that it was "still in the same position" and "needed freshness" because "fatigue" had set in.  The PCR court held that counsel's failure to move for a mistrial on this basis did not amount to deficient performance.  According to the PCR court, even if the jury's 6:21 p.m. note "could be considered a second indication of deadlock," the statute was not violated because "the jury, after

17

consultation with the judge, consented to continue its deliberations." (Return Attach. 1 (App'x Vol. 2 at 905), ECF No. 21-5.)

The PCR court's rejection of Macon's fifth claim is entitled to deference under AEDPA.

The South Carolina Supreme Court has instructed that "when a jury has twice indicated it is deadlocked, the trial judge should diplomatically discuss with the jury whether further deliberations could be beneficial.  The jury's consent to resume or to discontinue deliberations is determined, either expressly or impliedly, by its response to the trial judge's comments." Buff v. S.C. Dep't of Transp., 537 S.E.2d 279, 282 (S.C. 2000); State v. Pauling, 470 S.E.2d 106, 109 (S.C. 1996) ("If the judge is satisfied that the jury consents to return for further deliberation, he should not dismiss it, but should permit further deliberation.").

Here, after receiving the jury's 6:21 p.m. note, the court summoned the foreperson, who explained that the "majority" of the jurors "wouldn't mind coming back tomorrow," adding "we'll come back tomorrow at whatever time you give me." (Return Attach. 1 (App'x Vol. 1 at 451-52), ECF No. 21-3.)  The court told the foreperson, "We'll start back at 10:00 in the morning.  Once they get here they can begin their deliberations." (Id. Attach. 1 (App'x Vol. 1 at 452), ECF No. 21-3.)  The court then brought the rest of the jurors into the courtroom to confirm the plan:

> All right, ladies and gentlemen of the jury, I have received your note[.]  And I have inquired, because I wasn't clear from the note what exactly you all were asking for, but the Foreman tells us that you all are ready to retire for the evening and that you would like to come back in the morning.  Since it is late, I am going to have you all come back at 10:00 in the morning.

(Id. Attach. 1 (App'x Vol. 1 at 452-53), ECF No. 21-3.)  None of the jurors voiced disagreement with this course of action.  They returned the next morning and deliberated for nearly three hours before returning a guilty verdict.

18

On this record, even if the 6:21 p.m. note constituted the second indication of deadlock, the trial court did not violate § 14-7-1330 because, as the PCR court reasonably found, the jury consented to resuming its deliberations in the morning.  See Buff, 537 S.E.2d at 283 (consent implied where "none of the jurors expressed any unwillingness to comply with the trial judge's request"); Edwards v. Edwards, 121 S.E.2d 432, 436 (S.C. 1961) (consent implied where jurors did not verbally respond to the court's request and "returned immediately to the jury room for further deliberation"); Drakeford, 113 S.E. at 310 (consent implied where there was "no insistence . . . that a verdict could not be agreed on and no objection or complaint . . . on the part of the jury as to retiring for further deliberation"); State v. Rowell, 56 S.E. 23, 29 (S.C. 1906) (consent implied where "there was no indication of any unwillingness on the part of the jury to retire a third time").  Therefore, because counsel had no valid basis on which to move for a mistrial, the PCR court reasonably held that Macon could not establish deficient performance.

## IV. CONCLUSION

In sum, Macon has failed to show that the PCR court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).  Accordingly, the court grants Respondents' motion for summary judgment (ECF No. 22) and denies Macon's § 2254 petition (ECF No. 1).  The court declines to issue a certificate of appealability because Macon has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
September 10, 2024

**NOTICE OF RIGHT TO APPEAL**

Macon is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.